Matthew A. DelGROSSO,
et al., Plaintiffs,

v.

SPANG and COMPANY, Defendant.

Franklin DiFRANCESCO and
Barry K. Racz, Plaintiffs,

v.

SPANG and COMPANY, Defendant.

Civ. A. Nos. 82–2672, 89–1680.

United States District Court,
W.D. Pennsylvania.

Aug. 19, 1991.

Daniel P. McIntyre, United Steelworkers of America, Kathryn Simpson, Pittsburgh, Pa., William T. Payne, Los Angeles, Cal., for plaintiffs.

Hollis Hurd, Kevin Lucas, James Morton, Pittsburgh, Pa., for defendant.

Dale Grant, New York City, for administrator.

John J. Kearns, III, Pittsburgh, Pa., for vested participants.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is plaintiffs' Motion to Distribute Surplus. For the reasons stated hereafter, this Court finds that an independent plan administrator shall be appointed to terminate the Pension Plan of the Ferroslag Division of Spang and Company (the Plan).[1] Additionally, the administrative expenses incurred by the independent administrator shall be paid by Spang.

The central issue presently before the Court is whether an independent admin-istrator may terminate a pension plan despite the plan sponsor's desire to continue the plan's existence. At a status conference held in these cases on January 4, 1991, Spang resurrected this issue of plan termination. Section 12.1 of the Plan states that Spang "shall have the sole and absolute right to terminate this Plan." Spang states that it does not intend to terminate the Plan, but instead will continue the Plan's existence, professedly for the purposes of funding new groups of employees added to the Plan, merging the Plan with another plan, and providing retiree medical benefits. (Defendant's brief at 27). Spang argues that § 12.1 vests exclusive authority to terminate or continue the Plan in Spang, and consequently neither the plan administrator, Plan beneficiaries, nor this Court may compel termination of the Plan.

The short answer to Spang's argument is that this issue has been considered and resolved by the Court of Appeals. The Court of Appeals directed that "an independent administrator be appointed to determine whether to terminate the Plan, and to allocate the surplus assets among the appropriate participants." *DelGrosso v. Spang and Company*, 769 F.2d 928, 938 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986). In response to Spang's contention that § 12.1 precludes an independent administrator from terminating the Plan, the Court stated:

Spang contends in a supplemental letter brief that an independent administrator may not decide to terminate the Plan, relying on a provision in the Spang Plan (section 12.1) to the effect that "The Company shall have the sole and absolute right to terminate the plan." We note, however, that ERISA authorizes the Plan administrator to terminate a

---

1. The parties disagree as to the specific terms of the Plan. Plaintiffs contend that the terms of the Plan are those contained in the November 1, 1980 version as modified on November 20, 1990, to prohibit Spang from reverting the Plan's surplus. Defendant, on the other hand, argues that the Plan is comprised of the November 1, 1980 provisions as modified on November 20, 1990, but also as modified on February 21, 1984 and January 29, 1985, to reflect legislative modifications of the tax code. The Court refrains from determining at this time whether amendments allegedly made in 1984 and 1985 are part of the Plan because the parties agree as to the Plan provisions that are relevant for the questions presently in issue.

plan. 29 U.S.C. § 1341(a); see Employment Coordinator (RIA) ¶ B–21, 120 (1985). An independent administrator thus need not follow an inconsistent plan provision to the contrary. 29 U.S.C. § 1104(a)(1)(D). Nor does the administrator's authority to terminate unduly hamper the employer's freedom to decide whether or not to maintain a plan; nothing prevents the employer from terminating the plan if it desires to cease maintaining the plan or from creating a new plan if it desires to maintain a plan. In the circumstances of this case, where all plant locations covered by the plan have been closed, Spang's contention that it might wish to continue to maintain the plan is disingenuous.

*Id.* at 938 n. 12.

Spang strenuously asserts that this Court need not abide the Court of Appeals determination of this issue. First, Spang contends that the Court's discussion is merely *dictum*. However, the circumstances of these cases belie such a characterization. The question of an independent plan administrator's power to terminate a plan was briefed to the *Spang* Court, and formed a basis of Spang's subsequent petitions for reconsideration in the Court of Appeals and for certiorari. *See* Petition for Rehearing at 11, *DelGrosso v. Spang & Co.*, Nos. 84–3618, –3644 (3d Cir. Sept. 9, 1985); Petition for Writ of Certiorari at 7–8, *Spang & Co. v. DelGrosso*, No. 85–1340, *denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986). The issue was actually considered and decided by the Court of Appeals, and thus constitutes the law of the case. Consequently, this Court is bound by the Court of Appeals' determination.

▮ Next, defendant argues that the continued existence of the Plan is necessary to discharge Spang's obligation under the Plan and pension agreement to provide pensions. Defendant contends that purchase of a group annuity contract would not relieve it of potential liability because it would be liable should the Company issuing the annuities become bankrupt. Spang relies on *Murphy v. Heppenstall Co.*, 635 F.2d 233 (3d Cir.1980), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982), in support of this contention. In *Murphy*, the Court held that employees may directly recover from an employer, post-termination, additional benefits to which the employer has contractually obligated itself. In the present case, however, numerous provisions of the Plan purport to insulate defendant from post-termination liability. *See* Plan § 10.1 ("The assets of this Trust shall be the sole source of payment of benefits, and no benefits which are to be provided by this Plan shall create or establish any liabilities of or obligations on any other entity for the payment of such benefits."); *id.* § 12.1 ("[T]he Plan and its assets shall be the sole and absolute source of benefits established by this Plan."); *see also* 1988 Loraine Plan § 12.2 ("If this Plan shall terminate or be terminated, neither the Plan nor the Company nor any member of the Controlled Group shall guarantee any benefits under this Plan...."). Defendant's concern for post-termination liability appears feigned in light of defendant's willingness to terminate the Plan as it applied to the Chicago participants and appropriate the surplus for itself. Therefore, the Court finds this argument unpersuasive.

Finally, Spang argues that the 1986 amendments of 29 U.S.C. § 1341 overturn *Spang* and "make[ ] perfectly clear" that plan administrators lack power to terminate pension plans. Of course, this Court must apply the law currently in effect. "The law of the case pronounced in an appellate court's mandate yields to a different pronouncement of law by a body having substantive lawmaking competence." *United States v. Butenko*, 494 F.2d 593, 640 (3d Cir.1974) (Gibbons, J., dissenting). Hence, this Court is not bound by *Spang* if the amendments to § 1341 compel a different outcome. After a review of the amendments to § 1341, however, the Court finds that Congress did not overturn or devitalize the Court of Appeals' decision in *Spang*.

The *Spang* Court relied on 29 U.S.C. § 1341(a) which then stated:

Before the effective date of the termination of a single-employer plan, the plan administrator shall file a notice with the [PBGC] that the plan is to be terminated on a proposed date (which may not be earlier than 10 days after the filing of the notice), and for a period of 90 days after the proposed termination date the plan administrator shall pay no amount pursuant to the termination procedure of the plan unless, before the expiration of such period, he receives a notice of sufficiency under subsection (b) of this section. Upon receiving such a notice, the plan administrator may proceed with the termination of the plan in a manner consistent with this subtitle.

In amending § 1341, Congress expanded the procedural requirements for termination of single-employer plans. Congress created a distinction between standard terminations and distress terminations. Congress further provided that a plan may be terminated only in accordance with the requirements of 29 U.S.C. § 1341 or 29 U.S.C. § 1342. 29 U.S.C. § 1341(a)(1). The amendments to § 1341 do not, however, lessen the plan administrator's role in plan terminations. Plan administrators still must notify the PBGC of intent to terminate a plan before termination can be effective. 29 U.S.C. § 1341(b)(2)(A) (plan administrator must notify PBGC of intent to terminate under a standard termination); 29 U.S.C. § 1341(c)(2)(A) (plan administrator must notify PBGC of intent to terminate under a distress termination). The plan administrator must also still forebear distribution of plan assets pending PBGC review of the proposed termination. 29 U.S.C. §§ 1341(b)(2)(D), (c). Upon receipt of notice from the PBGC of expiration of the 60–day period, plan administrators continue to be authorized to proceed with plan termination and distribution of plan assets. 29 U.S.C. §§ 1341(b)(2)(D), (b)(3), (c)(3). Thus, the role of the administrator relied on by the Court in *Spang* remains the same. The amendments of § 1341 did not add any language obligating a plan administrator to adhere to the command of the plan sponsor. Hence, contrary to defendant's assertions, the current language of

§ 1341 does not preclude a plan administrator from terminating a plan in the face of employer opposition.

The legislative history of the amendments to § 1341 similarly does not evince congressional intent to reverse the *Spang* Court's construction of § 1341. The House Report demonstrates that Congress' intent in amending § 1341 was not to modify the role of plan administrators in plan terminations, but instead was to prevent plan sponsors from dumping their pension obligations on the PBGC. H.Rep. No. 99–241, Part 2, 99th Cong., 2d Sess. 41–44 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 685, 699–702. The Senate Report likewise manifests congressional intent to protect the PBGC from excess and untoward liability. S.Rep. No. 99–146, 99th Cong., 2d Sess. 451–52 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 42, 410–11.

Although both reports recognize the right of plan sponsors to terminate pension plans, such power does not preclude plan administrators from also terminating plans, even in the face of employer opposition to a termination. The existence of an ERISA plan is a business decision. ERISA does not require employers to establish pension plans, nor does it require them to continue plans indefinitely. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 (3d Cir.1990). Plan sponsors are free to terminate single-employer pension plans at any time, in accordance with § 1341, and subject to collective bargaining agreements and plan provisions to the contrary. Nevertheless, the power to terminate a plan does not carry with it a commensurate absolute right to continue a plan. Termination of a plan by the plan administrator is not inconsistent with an employer's ability to terminate a plan when it chooses. As stated by the Court of Appeals, an administrator's authority *to* terminate a plan does not impair the employer's freedom to maintain a plan; "nothing prevents the employer from terminating the plan if it desires to cease maintaining a plan or from creating a new plan if it

desires to maintain a plan." *Spang*, 769 F.2d at 938 n. 12.

■ ERISA generally authorizes an employer to retain discretion whether to continue or to terminate a plan by allowing plan sponsors to serve as the plan administrator. In these situations, plan sponsors can insure that the existence of a plan is always consistent with the employer's intent. Most employers exercise this right and impose themselves as plan administrator. *PBGC v. Heppenstall Co.*, 633 F.2d 293, 296 n. 1 (3d Cir.1980). Courts have recognized the special nature of the joint employer role as plan sponsor and administrator, and have therefore determined that where the employer acts as both plan sponsor and administrator, the "employer's decision to end or terminate an employee benefit plan is unconstrained by the fiduciary duties that ERISA imposes on plan administration." *Hozier*, 908 F.2d at 1162; *Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 229, 231 (3d Cir.1989). Where, however, the plan is administered by a neutral administrator, the business judgment rationale underlying *Hozier* and *Payonk* is inapplicable. In these instances, the administrator must act solely in the interests of the plan beneficiaries. 29 U.S.C. § 1104(a). Via the existence of a neutral administrator, an employer relinquishes the minimal control it could assert over plan administration. Accordingly, ERISA does not compel plan administrators to act in accordance with employer will; instead, ERISA merely recognizes employers' business decisions to continue employee benefit plans, and grants employers the leeway necessary to implement their business decisions. Therefore, the Court finds that the legislative history regarding the amendments of § 1341 is consistent with the Court of Appeals' ruling in *Spang*.

■ In the present case, defendant acts as both plan sponsor and administrator, and defendant has reserved exclusive discretion to terminate the Plan. Had defendant acted properly in its role as plan administrator, defendant would be free to retain complete control over plan termination. However, defendant committed a substantial breach of its fiduciary duties by amending the Plan to permit a reversion of surplus assets to itself. As a remedy for defendant's breach of its fiduciary duty, the Court of Appeals has determined that defendant must be removed from the role of plan administrator and replaced by an independent administrator. *Spang*, 769 F.2d at 938.[2] By breaching its fiduciary obligations, defendant subjected itself to a severance of its control over the plan administrator's judgment regarding plan termination.[3] Pursuant to the Court of Appeals' determination, an independent plan administrator is empowered to terminate the Plan, despite Spang's objections thereto. *Id.* at 938 n. 12.

At the last status conference held in these cases, plaintiffs expressed an interest in retaining defendant as plan administrator instead of replacing defendant with an independent administrator. Plaintiffs felt that these cases could be resolved through an agreement between the parties to distribute the Plan assets among the beneficiaries. In light of defendant's obstinate determination to retain control over the Plan surplus and to prevent distribution of the surplus among the beneficiaries, the Court finds that Spang may not continue as plan administrator. Consequently, the Court will appoint an independent administrator to determine whether to terminate the Plan. If the independent administrator decides that termination of the Plan is warranted, the administrator shall terminate the Plan in accordance with 29 U.S.C. § 1341 and 29 C.F.R. § 2616, and allocate the Plan surplus among the plaintiffs in accordance with 29 U.S.C. §§ 1341, 1344 and 29 C.F.R. §§ 2617.21–.23, 2618.[4]

2. Additionally, the administrator need not abide by defendant's determinations regarding plan termination. *Spang*, 769 F.2d at 938 n. 12.

3. Of course, this is a one-way proposition. A plan administrator may choose to terminate a plan against the sponsor's will, but may not

require a plan to continue if the sponsor desires to terminate the plan.

4. Plaintiffs propose a termination scheme which differs somewhat from the above referenced statutorily and regulatorily mandated termi-

Regarding the choice of administrator, the Court finds that Dale B. Grant, who was appointed by this Court as independent plan administrator on February 5, 1987, remains the most suitable person to serve as administrator. However, Ms. Grant continues to decline from serving as plan administrator pending resolution of the legal issues in dispute in this case. The Court was recently notified by Ms. Grant that she desired to await this Court's determination regarding the authority of an independent administrator to terminate the Plan before she would serve as plan administrator. (Letter from Dale B. Grant to Court (7/29/91)). Ms. Grant stated that she would determine whether to serve as administrator upon review of this Court's decision. *Id.* Therefore, the Court will give Ms. Grant an opportunity to review this decision and notify the Court of her willingness to serve as plan administrator. Should Ms. Grant refuse such duties, the Court will solicit from plaintiffs a list of qualified actuarial firms willing to serve as administrator, and will then give defendant an opportunity to object to plaintiff's submissions.

 Plaintiffs argue that the expenses which will be incurred by the independent administrator should be borne by defendant. Defendant responds that the decision as to whether defendant or the Plan should bear the administrative expenses is an issue to be resolved by the plan administrator. The Court finds that this question is properly resolvable by the Court, and further, that defendant shall bear the expenses of the plan administrator. Defendant relies on 29 U.S.C. § 1104(a)(1)(A)(ii) for the proposition that administrative expenses are properly paid by the Plan. Although this provision does indeed generally allocate administrative expenses to a plan, this section does not forbid parties to a plan from contractually altering the allocation of administrative expenses. In the present case, the Plan obligates Spang to reimburse the plan administrator for administrative expenses. (Plan § 7.6). Con-

sequently, Spang is contractually obligated to pay the administrative expenses which the independent administrator will incur. Even in the absence of the Plan provision, however, Spang would still be liable for a considerable portion of the administrator's expenses. An independent administrator is only being appointed as a remedy for Spang's substantial breach of its fiduciary duties. A new administrator will be forced to incur significant expenses examining the Plan and acquiring sufficient knowledge of the Plan to enable her to properly administer the Plan. These expenses will be incurred solely as a result of Spang's breach of its fiduciary duty. Therefore, imposing such expenses upon Spang is just and equitable. 29 U.S.C. § 1132(a)(3)(B).

An appropriate Order will be issued.

---

nation procedures. This Court declines to depart from the established procedural framework for plan terminations because Congress has de-

termined that such procedures are to be employed. 29 U.S.C. § 1341(a)(1).